216 P.3d 1024 (2009)
STATE of Washington, Respondent,
v.
James Ryan KENYON, Petitioner.
No. 81374-4.
Supreme Court of Washington, En Banc.
Argued June 23, 2009.
Decided October 1, 2009.
*1025 Edward P. Lombardo, Mason County Prosecuting Attorney's Office, Shelton, WA, for Respondent.
Thomas Edward Doyle, Attorney at Law, Hansville, WA, Patricia Anne Pethick, Attorney at Law, Tacoma, WA, for Petitioner.
SANDERS, J.
¶ 1 This case requires examination of the speedy trial rule, Superior Court Criminal Rule (CrR) 3.3.[1]
¶ 2 After many continuances, the trial court continued James Ryan Kenyon's trial for seven counts of first degree unlawful possession of a firearm past the speedy trial date due to the unavailability of a judge to preside over his trial. Kenyon moved to dismiss the case pursuant to CrR 3.3, but the trial court denied the motion, ruling the time period was excluded reasoning the unavailability of a judge is an unavoidable circumstance, unlike court congestion. Kenyon was convicted. The Court of Appeals affirmed, concluding Kenyon's trial was timely under the rule. We reverse and dismiss the charges with prejudice.

FACTS AND PROCEDURAL HISTORY
¶ 3 On February 15, 2006[2] Kenyon was charged with six counts of unlawful possession of a firearm in the first degree and incarcerated at all times prior to trial. Kenyon was arraigned on February 22. The last day to begin a timely trial since he was in custody was 60 days later, April 24.
¶ 4 On March 13 Kenyon appeared before the trial court for an omnibus hearing. His attorney requested a continuance of the hearing to do more investigation and to interview witnesses. His attorney also indicated he would not object to continuing the trial date if necessary. The hearing was continued to March 27.
¶ 5 On March 27 Kenyon appeared for his omnibus and pretrial hearing. His attorney informed the trial court that he was waiting for transcripts of testimony from a previous *1026 related trial and for several reports from the investigator.
¶ 6 On April 7 Kenyon appeared for his readiness hearing. His attorney requested another continuance because of outstanding discovery issues and the need to interview several people of interest. Kenyon waived his right to a speedy trial at the hearing, and a new timely trial deadline of June 6 was set. Kenyon's new readiness hearing was set for May 19.
¶ 7 At the hearing on May 19 the State provided Kenyon's attorney with additional discovery. Kenyon's attorney requested another continuance, but Kenyon objected and refused to sign the paperwork. The trial court rescheduled the readiness hearing for May 26. The final trial deadline remained June 6.
¶ 8 Kenyon filed a motion to change attorneys because he believed his attorney was taking too long to prepare his case for trial. On May 26 Kenyon appeared for his readiness hearing. His attorney then informed the court Kenyon's case was more complicated than Kenyon believed because he was facing multiple felony charges that carried lengthy sentences. His attorney also informed the court there was a lot of discovery and he was still waiting for the investigator's report. The trial court denied Kenyon's request to change attorneys. Both the State and Kenyon's attorney told the court they were having discovery issues, so the court reset the readiness hearing for June 2.
¶ 9 When Kenyon appeared for his readiness hearing on June 2, the State and Kenyon's attorney notified the trial court that discovery was still ongoing. The trial court reset the readiness hearing for June 5.
¶ 10 On June 5 Kenyon's attorney informed the trial court his investigative reports were still not finished and there was another person he wanted to interview. He requested a 30-day continuance under State v. Campbell, 103 Wash.2d 1, 14-15, 691 P.2d 929 (1984). Kenyon objected to the continuance, but the trial court granted it. A new timely trial deadline was set for July 5, and a readiness hearing was set for June 7, with the trial to possibly start the next day.
¶ 11 But instead on June 7 Kenyon's attorney informed the court he needed to interview several other witnesses. The readiness hearing was rescheduled for June 23. Kenyon's attorney informed the trial court on June 23 that he still needed to interview several witnesses, so the readiness hearing was again rescheduled for June 26.
¶ 12 Kenyon's attorney informed the trial court on June 26 that he still had not been able to interview all of the witnesses because the detectives assisting in coordinating the interviews with the witnesses were called away on another matter. Kenyon's attorney requested a new readiness hearing be set for June 30, and the trial court granted the request.
¶ 13 On June 30 the trial court told the parties there would be only one trial judge in Mason County in July because one of the two judges was on vacation. The court set a status hearing for July 5.
¶ 14 On July 5 the trial court advised the parties it was presiding over another criminal case that would likely continue through July 6. Kenyon's attorney moved to dismiss the case pursuant to CrR 3.3. The trial court denied the motion, stating it was continuing the trial due to the unavailability of a judge under CrR 3.3(e)(8), not "court congestion." The court opined this was an excluded period, which did not count toward computing the time for trial. The trial court said unavailability of a judge was an unavoidable circumstance because he was already hearing a case while the other judge was on vacation, noting Kenyon's case would have been heard if the other judge was not on vacation. The trial court informed the parties it would call Kenyon's case on July 6 for a status conference.
¶ 15 On July 7 the trial court informed the parties the other case was still pending but it would sign an order regarding the excluded period, which would end as soon as the other case concluded. Kenyon's attorney again argued Kenyon's right to a speedy trial was violated and made a motion to dismiss with prejudice, which was denied. The deputy prosecutor informed the trial court he would be out of the office the week of July 9 on *1027 another scheduled matter and that he was also beginning another trial that was set to start that day, July 7, and proceed into mid-July.
¶ 16 Kenyon's case was called for a status hearing on July 17. The trial court told the parties that the jury in the other case was deliberating, so it was available to try the case, thus ending the excluded period. Kenyon's attorney again requested a dismissal. The trial court again denied the motion, stating the reason was unavailability of a judge. A readiness hearing was set for July 28 and trial was set for August 1, with a new timely trial deadline of August 16.
¶ 17 Kenyon was charged by fourth amended information with seven counts of first degree unlawful possession of a firearm. Kenyon's trial began on August 1. Kenyon's attorney again moved to dismiss the case for violating Kenyon's right to a speedy trial, which the trial court again denied. A jury found Kenyon guilty of seven counts of first degree unlawful possession of a firearm on August 3. The trial court sentenced Kenyon to 232 months in prison on August 21.
¶ 18 Kenyon appealed. The Court of Appeals affirmed in a partially published opinion. State v. Kenyon, 143 Wash.App. 304, 177 P.3d 196 (2008). We granted review. 164 Wash.2d 1013, 195 P.3d 88 (2008).

STANDARD OF REVIEW
¶ 19 We review an alleged violation of the speedy trial rule de novo. State v. Carlyle, 84 Wash.App. 33, 35-36, 925 P.2d 635 (1996). "`[T]he decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court,'" and we will not disturb the trial court's decision unless there is a clear showing it is "`manifestly unreasonable, or exercised on untenable grounds, or for some untenable reasons.'" State v. Flinn, 154 Wash.2d 193, 199, 110 P.3d 748 (2005) (quoting State v. Downing, 151 Wash.2d 265, 272, 87 P.3d 1169 (2004) and State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971)).

ANALYSIS
¶ 20 We are asked to determine whether the speedy trial rule, CrR 3.3, which allows exclusions for unavoidable or unforeseen circumstances, permits a trial court to continue a criminal trial past the speedy trial deadline because of the unavailability of a judge to preside over the trial. We must also decide whether the trial court must make a careful record of the unavailability of courtrooms and the availability of judges pro tempore to hear the case under the rule as amended effective September 1, 2003.
¶ 21 Kenyon argues his right to a speedy trial was violated and the criminal charges should have been dismissed because no court was available to hear his case and the trial court did not make a record of that or of the availability of a pro tempore judge. The State argues Kenyon's speedy trial right was not violated because the trial court properly followed revised CrR 3.3 to determine Kenyon's final start date for trial. The State argues the court did not err when continuing Kenyon's trial because his attorney asked for many continuances, the only available judge was already presiding over another case, and the deputy prosecutor trying Kenyon's case was unavailable for a week due to a prior scheduled leave.
¶ 22 The purpose underlying CrR 3.3 is to protect a defendant's constitutional right to a speedy trial. State v. Mack, 89 Wash.2d 788, 791-92, 576 P.2d 44 (1978); State v. Cummings, 87 Wash.2d 612, 615, 555 P.2d 835 (1976). "[P]ast experience has shown that unless a strict rule is applied, the right to a speedy trial as well as the integrity of the judicial process, cannot be effectively preserved." State v. Striker, 87 Wash.2d 870, 877, 557 P.2d 847 (1976).
¶ 23 The trial court is responsible for ensuring compliance with the speedy trial rules. CrR 3.3(a)(1). For a defendant who is detained in jail, the trial court must set a trial date within 60 days of the defendant's arraignment. CrR 3.3(b)(1)(i). When a defendant is not brought to trial within the limits of CrR 3.3, then the court must dismiss the charges with prejudice if the defendant objects within 10 days after notice of trial date setting is mailed. CrR 3.3(d)(3), (h).
*1028 ¶ 24 Under CrR 3.3(e) certain periods are excluded when computing the time for a speedy trial. Continuances granted by the court are excluded from the time for trial. CrR 3.3(e), (f). CrR 3.3(e)(8) states, "Unavoidable or unforeseen circumstances affecting the time for trial beyond the control of the court or of the parties" are excluded in computing the time for trial. CrR 3.3(e)(8) was not in former CrR 3.3 (2001). The trial court here held the unavailability of a judge to preside over Kenyon's case was an unavoidable circumstance because it was already presiding over another case and the other judge was on vacation. The trial court said Kenyon's case would have been heard had the other judge not been on vacation. "Even though trial preparation and scheduling conflicts may be valid reasons for continuances beyond the time for trial period, court congestion is not." Flinn, 154 Wash.2d at 200, 110 P.3d 748 (citing Mack, 89 Wash.2d at 794, 576 P.2d 44). "[C]ourtroom unavailability is synonymous with `court congestion.'" State v. Warren, 96 Wash.App. 306, 309, 979 P.2d 915, 989 P.2d 587 (1999) (quoting State v. Kokot, 42 Wash.App. 733, 737, 713 P.2d 1121 (1986)). Under former CrR 3.3 (2001), court congestion was not "good cause" to justify delaying a criminal trial beyond the speedy trial period. Mack, 89 Wash.2d at 793, 576 P.2d 44. "When the primary reason for the continuance is court congestion, the court must record details of the congestion, such as how many courtrooms were actually in use at the time of the continuance and the availability of visiting judges to hear criminal cases in unoccupied courtrooms." Flinn, 154 Wash.2d at 200, 110 P.3d 748. A court can allow a continuance due to congestion when it carefully makes a record of the unavailability of judges and courtrooms and of the availability of judges pro tempore. State v. Silva, 72 Wash.App. 80, 84-85, 863 P.2d 597 (1993). A court must take action to alleviate court congestion. Warren, 96 Wash.App. at 310, 979 P.2d 915. The Court of Appeals correctly noted that since the revision of CrR 3.3, "the continuing viability of Mack and similar cases remains an open question." Kenyon, 143 Wash.App. at 313, 177 P.3d 196.
¶ 25 The Court of Appeals asserted:
[A]lthough the trial court did not look into the availability of pro tempore judges, it is clear that the conflict between the judge's longstanding vacation and Kenyon's trial was due to Kenyon's repeated requests for continuances and extensions  Kenyon's attorney made no fewer than eight requests to continue the trial or reschedule hearings because he was unprepared to move forward. Furthermore, there was no unnecessary delay because the court commenced trial as quickly as possible following defense counsel's completion of trial preparation; the trial court scheduled the trial for August 16, but moved it up to the earliest available trial date, August 1. Under the circumstances presented in this record, Kenyon's trial was timely under CrR 3.3.
Id. at 314, 177 P.3d 196 (footnote omitted). The Court of Appeals also noted that "with each continuance, the court was careful to document the reason." Id. at n. 7.
¶ 26 But the record here contains no information regarding the number or availability of unoccupied courtrooms nor the availability of visiting judges or pro tempores to hear criminal cases in the unoccupied courtrooms. The trial court made no note of other available courtrooms or judges because it held the continuance was not due to "court congestion" but rather to the other judge's vacation, which the trial court deemed to be an "unavoidable circumstance" under CrR 3.3(e)(8). The trial court never offered Kenyon a judge pro tempore.[3] The Court of Appeals blamed Kenyon because his attorney requested several continuances to prepare for trial, many of them against Kenyon's wishes. But the continuances were deemed necessary to adequately prepare for Kenyon's trial.
*1029 ¶ 27 In Flinn this court held, "[i]f the sole reason for the continuance were the judicial conference, then the justification for the continuance would be similar to court congestion and the court would have to document the details of unavailable courtrooms and judges." 154 Wash.2d at 200-01, 110 P.3d 748. Similarly, here one judge was unavailable because he was presiding over another trial and the other judge was unavailable because he was on vacation. This amounts to court congestion, and the trial court must document the available courtrooms and judges.
¶ 28 Simply because the rule now allows "unavoidable or unforeseen circumstances" to be excluded in computing the time for trial does not mean judges no longer have to document the details of unavailable judges and courtrooms. Similar to former CrR 3.3 (2001) the court is still required to "state on the record or in writing the reasons for the continuance" when made in a motion by the court or by a party. CrR 3.3(f)(2). Here, the trial court should have documented the availability of pro tempore judges and unoccupied courtrooms. The failure to do so violated Kenyon's right to a speedy trial.

CONCLUSION
¶ 29 We reverse the Court of Appeals and dismiss the charges against Kenyon with prejudice.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, MADSEN, OWENS, FAIRHURST, J. JOHNSON, and STEPHENS, JJ.
CHAMBERS, J. (concurring).
¶ 30 I agree with the majority that when a court continues a trial beyond the speedy trial time requirements of CrR 3.3, it must document the availability of pro tempore judges and unoccupied courtrooms. However, the heart of the question before us is the meaning of "[u]navoidable or unforeseen circumstances affecting the time for trial beyond the control of the court or of the parties." CrR 3.3(e)(8). In my view, the purpose of excluding periods of "unavoidable and unforeseen circumstances" in computing the speedy trial deadline is to allow the court flexibility to deal with truly exceptional circumstances. Here, however, the reason for the delay was not unforeseen, unavoidable, or in any way exceptional. Rather, delay occurred over objection from the defendant because one judge was presiding over a separate trial and the other judge was on vacation. A judge presiding over another trial is doing precisely what a judge is supposed to do. While the duration of a trial may be unforeseen and beyond the control of the parties, the fact that a case scheduled for trial actually commences is not. It is absurd to claim that such an event is either unavoidable or unforeseeable. Similarly, while judges are surely deserving of vacations, when they occur is rarely a surprise. While CrR 3.3 allows some "flexibility in avoiding the harsh remedy of dismissal with prejudice," State v. Flinn, 154 Wash.2d 193, 199 n. 1, 110 P.3d 748 (2005), allowing continuances beyond the 60 day limit based on another trial or a judge's vacation would render the speedy trial rule virtually meaningless.
¶ 31 I respectfully concur.
NOTES
[1] CrR 3.3 was most recently amended effective September 1, 2003.
[2] Unless otherwise noted all subsequent dates occurred in 2006.
[3] Trial courts should have a list of available judges pro tempore in the area. Superior Court Administrative Rules 6(c) provides:

Each superior court shall file with the Administrative Office of the Courts (AOC) by February 1st the list of elected judges pro tempore to which it will be assigning cases during the year commencing on April 1st. Each court may appoint a minimum of three (3) elected judges pro tempore or one (1) elected judge pro tempore for every five (5) judges....